Sara Lynn Townsend (SBN 320300)
townsend@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Neil J. McNabnay (*Pro Hac Vice*)
mcnabnay@fr.com
Ricardo J. Bonilla (*Pro Hac Vice*)
rbonilla@fr.com
Rodeen Talebi (CA SBN 320392)
talebi@fr.com
Andria R. Crisler (*Pro Hac Vice*)
crisler@fr.com
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Attorneys for Defendant
TOPCON POSITIONING SYSTEMS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>TOPCON POSITIONING SYSTEMS, INC.,<br><br>   Defendant. | Case No. 3:19-cv-03036-SK<br><br>**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>DATE: August 27, 2019<br>TIME: 9:30 a.m.<br>DEPT: Courtroom C, 15th Floor<br>JUDGE: Hon. Sallie Kim |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 27, 2019, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom C, 15th Floor, before the Honorable Sallie Kim, in the United States District Court for the Northern District of California, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Topcon Positioning Systems, Inc. ("Topcon") will and hereby does move the Court to dismiss Plaintiff Symbology Innovations, LLC's ("Symbology") Complaint for Patent Infringement with prejudice for the reasons set forth below.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, and such additional papers and arguments as may be presented at or in connection with the hearing.

Dated: July 17, 2019

FISH & RICHARDSON P.C.

By:  */s/ Rodeen Talebi*
     Rodeen Talebi

Attorneys for Defendant
TOPCON POSITIONING SYSTEMS, INC.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF THE ISSUES .......................................................................... 1

III.  LEGAL STANDARD ........................................................................................... 3

    A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6). ...................................... 3

        1.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6). ................................................................... 3

        2.   The Law of 35 U.S.C. § 101. ................................................................. 4

IV.   ARGUMENT ........................................................................................................ 5

    A.   The '752 Patent is Invalid Under § 101. ................................................................ 6

        1.   *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval. ........................................ 6

        2.   *Alice* Step 2: Claim 1 of the '752 Patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter. ................................................................... 10

        3.   The remaining claims fail both steps of the *Alice* test. ........................... 13

    B.   The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract. ............................................................................................... 14

V.    CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ............................................................................................................*passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ..........................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................................3

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) .....................................................................................................3, 12

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ........................................................................................................11

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...................................................................................................................3, 4, 5

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ........................................................................................................12

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014) ................................................................................................13

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) ..............................................................................................................3

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) .....................................................................................................8

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ..........................................................................................................4

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ........................................................................................................10

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ............................................................................................................................3

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ............................................................................................................................4

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ..................................................................................................10, 11

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)..........................................................................................4

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)............................................................................................................4

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012).............................................................................................3

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015).......................................................................................12

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017).........................................................................................8

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015).........................................................................................9

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ..............................................................................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) .....................................................................................................4

*Parker v. Flook*,
    437 U.S. 584 (1978)..........................................................................................................4

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .............................5

*Recognicorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)...............................................................................7, 8, 11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).........................................................................................5

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)...............................................................................8, 9, 11

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016).........................................................................................11

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)................................................3, 6, 9, 10

**Statutes**

35 U.S.C. § 101 ........................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................2, 3, 5

## I. INTRODUCTION

Topcon Positioning Systems, Inc. ("Topcon") requests that the Court dismiss this case because U.S. Patent No. 8,424,752 (the "'752 Patent") does not embrace patent-eligible subject matter. The claims of the '752 Patent are directed to the abstract idea of data recognition and retrieval, and none of the claims recites any specific non-conventional hardware or software. In *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017), the Federal Circuit held claims directed to decoding a QR code—like the claims at issue in this case—invalid under *Alice*, and affirmed the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The claims of the '752 Patent cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, Topcon thus requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II. STATEMENT OF THE ISSUES

On May 31, 2019, Plaintiff Symbology Innovations, LLC ("Symbology") filed this lawsuit accusing Topcon of infringing the '752 Patent. Symbology accuses Topcon of infringing "at least Claim 1" of the '752 Patent by Topcon's alleged "internal testing" of a Quick Response Code ("QR code") incorporated into promotional material:



Compl. ¶¶ 18–23 (annotated).

The '752 Patent is entitled "System and Method for Presenting Information about an Object on a Portable Electronic Device." It is directed to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." '752 Pat., Abstract.

Claim 1 of the '752 Patent, set forth below, is representative of the claims:

> 1. A method comprising:
>
> capturing a digital image using a digital image capturing device that is part of a portable electronic device;
>
> detecting symbology associated with an object within the digital image using a portable electronic device;
>
> decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;
>
> sending the decode string to a remote server for processing;
>
> receiving information about the object from the remote server wherein the information is based on the decode string of the object;
>
> displaying the information on a display device associated with the portable electronic device.

'752 Pat., Cl. 1.

Under Symbology's characterization of the '752 Patent, this claim can be broken down into six main steps: (1) capturing an image with a camera or a scanner on a "portable electronic device" (*e.g.*, taking a photograph or scanning an image with a smartphone); (2) detecting a symbology (*e.g.*, recognizing a barcode in the captured image); (3) decoding the symbology to obtain a "decode string" (*e.g.*, reading information from the barcode); (4) sending the "decode string" to a "server" for processing (*e.g.*, requesting a webpage based on the information obtained from the barcode); (5) receiving information from the "server" in response (*e.g.*, receiving the contents of the webpage ); and (6) displaying the information received on the portable electronic

1  device (*e.g.*, displaying a webpage). Put simply, these steps are directed to recognizing and
2  retrieving information associated with a pattern.
3        The applicant made clear through his own language in the specification that the
4  components and processes for carrying out the claimed method were conventional. For example,
5  the claimed "portable electronic device" can be virtually any mobile device capable of taking a
6  photograph or scanning an image. *Id.*, 1:58–61 ("Examples of the portable electronic devices that
7  contain both applications and imaging systems include Apple Computer's IPhone, Google's
8  Droid, and various mobile devices from Motorola"); *id.*, 2:57–61 ("Using any applicable visual
9  detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the
10 user may select an object by scanning or capturing an image of symbology (e.g., barcodes)
11 associated with the object."). The applicant further acknowledged that various programs and
12 applications operable on a portable electronic device to scan and decode a barcode were available
13 in the prior art. *Id.*, 3:29–33 ("Examples of applications that allow scanning include Neomedia's
14 Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc.").
15 According to the '752 Patent, once a barcode is decoded (using any of these existing applications),
16 the "decode string" (*i.e.*, the information obtained from the barcode) is then "sent" to a "remote
17 server" to retrieve information (*e.g.*, webpage content) that is then displayed on the portable
18 electronic device. *Id.*, 3:21–28.

19 **III.   LEGAL STANDARD**
20     **A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6).**
21         **1.   This Case Should Be Disposed of at the Pleading Stage Through Rule 12(b)(6).**
22
23       Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss
24 a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6)
25 motion, a complaint must provide "allegations that raise a right to relief above the speculative
26 level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).
27 Although factual allegations are taken as true, legal conclusions are given no deference—those
28 matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that

1  allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions").
2  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to
3  relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum
4  expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397,
5  401 (5th Cir. 2007) (internal citations and quotations omitted).

6  Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S.
7  593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is
8  apparent from the face of the patent that the asserted claims are not directed to eligible subject
9  matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J.,
10  concurring). In those situations, claim construction is not required to conduct a § 101 analysis.
11  *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e
12  perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity
13  determination under § 101.").

14  **2. The Law of 35 U.S.C. § 101.**

15  Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any
16  new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also,
17  the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and
18  abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract
19  ideas are ineligible for patent protection because a monopoly over these ideas would preempt their
20  use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are
21  not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting
22  *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

23  Determining whether a patent claim is impermissibly directed to an abstract idea involves
24  two steps. First, the court determines "whether the claims at issue are directed to a patent-
25  ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second,
26  if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive
27  concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in
28

practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## IV.   ARGUMENT

Symbology's Complaint should be dismissed. The claims of the '752 Patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Symbology has failed to state a claim upon which relief may be granted, Topcon respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

/ / /

/ / /

/ / /

### A.  The '752 Patent is Invalid Under § 101.

#### 1.  *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '752 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

Claim 1 of the '752 Patent is representative of the claims. *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). In assessing whether Claim 1 is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

All Claim 1 of the '752 Patent covers is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data:

| Claim Language | Claimed Idea |
| --- | --- |
| A method comprising: | |
| capturing a digital image using a digital image capturing device that is part of a portable electronic device; | capturing data |
| detecting symbology associated with an object within the digital image using a portable electronic device; | detecting data |
| decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | decoding data |
| sending the decode string to a remote server for processing; | sending data |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object; | receiving data |
| displaying the information on a display device associated with the portable electronic device. | displaying data |

At a high level, this claim describes the most generic functional steps of a standard computer (*i.e.*, capturing, detecting, decoding, sending, receiving, and displaying data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make it any less abstract.

The specification admits that barcode scanning and decoding programs were prevalent at the time of the invention. '752 Pat., 3:29–36. Indeed, the claims implement this prior-art technology to carry out the steps of capturing, detecting, decoding, and retrieving information from a server. Claim 1 of the '752 Patent does no more than use existing technology to recognize an image, decode the image, then do something based upon the decoded information. It is thus directed to the abstract idea of data recognition and retrieval.

Courts have found similar patent claims to be ineligible. In *Content Extraction*, the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "could be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '752 Patent is abstract because it simply decodes an image to obtain information and then retrieves data from a server based on that information. The claims in *Content Extraction* were directed to data recognition and storage,

whereas the '752 Patent is directed to data recognition and retrieval—the former claims stored the recognized data, while the latter claims retrieve additional data based on the recognized data.

In *Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." *Recognicorp*, 855 F.3d at 1324. The claim at issue in *Recognicorp* recited:

> A method for creating a composite image, comprising:
>
> displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;
>
> selecting a facial feature image from the first area of the first display via a user interface associated with the first device;
>
> wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and
>
> reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.*

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The court provided several examples of long-utilized methods of encoding and decoding of data to transmit

information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* Claim 1 of the '752 Patent likewise simply decodes an image to obtain information, an abstract concept.

Additionally, in *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a bar code invalid under both *Alice* steps. *Secured Mail*, 873 F.3d at 907. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id.* at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id.* at 912.

The idea underlying Claim 1 of the '752 Patent is just as abstract as those of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 of the '752 Patent does not include any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, and then doing something based upon the decoded information. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). That Claim 1 of the '752 Patent sends and receives the decoded information over a network does not make it any less abstract. *See, e.g., Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific

computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '752 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode—without describing any specific roadmap for doing so, Claim 1 of the '752 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail*, 873 F.3d at 910–11.

### 2. *Alice* Step 2: Claim 1 of the '752 Patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter.

Because Claim 1 of the '752 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 of the '752 Patent "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 of the '752 Patent is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Each of the steps recited in Claim 1 of the '752 Patent is described only at a high level of generality as "capturing a digital image," "detecting" a barcode, "decoding [the barcode] . . . to obtain a decode string," "sending the decode string to a remote server for processing," "receiving

information . . . from the remote server," and "displaying the information." To accomplish these steps, Claim 1 of the '752 Patent recites the use of a "portable electronic device," "visual detection applications," and a "remote server." But the claimed "portable electronic device" can be virtually any device capable of taking a photograph ('752 Pat., 1:58–61), the "visual detection applications" can be a variety of off-the-shelf applications that users have installed on their smartphones (*id.*, 3:29–33), and the claimed "server" is implemented using generic hardware (*id.*, 9:65–10:1) to perform generic website functions (*id.*, 5:33–42).

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 1 of the '752 Patent shows any unconventional method that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the '752 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (*i.e.*, decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in Claim 1 of the '752 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional

1  descriptions devoid of technical explanation as to how to implement the invention"). Similar to the
2  invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752 Patent "'transforms' the abstract
3  idea of . . . decoding," *i.e.*, recognizing information, "into patent-eligible subject matter."
4  *Recognicorp*, 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

5        Unlike the Federal Circuit's decision in *Berkheimer*, this case does not present any factual
6  disputes requiring resolution before the Court can decide this § 101 issue. In *Berkheimer*, the
7  Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d]
8  parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369
9  (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the
10 specification were included in the claims. For those claims where the inventive feature in the
11 specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding
12 whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But
13 where the claims did not recite the purportedly inventive features described in the specification,
14 the Federal Circuit concluded that they were directed to patent ineligible subject matter under §
15 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor
16 the specification of the patent describes any unconventional components or the use of generic
17 components in some unconventional manner, and no amount of fact discovery can change that.

18       Courts have repeatedly held that the presence of generic hardware and software like the
19 kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible.
20 *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer
21 receives and sends the information over a network—with no further specification—is not even
22 arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to
23 limit the abstract idea of recognizing and storing information from hard copy documents using a
24 scanner and a computer to a particular technological environment. Such a limitation has been held
25 insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an
26 "abstract idea does not become nonabstract by limiting the invention to a particular field of use or
27 technological environment, such as [mobile services]." *Intellectual Ventures I LL v. Capital One*
28 *Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

12   DEFENDANT'S MOTION TO DISMISS
Case No. 3:19-cv-03036-SK

Because Claim 1 is altogether devoid of any "inventive concept," it is patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3. The remaining claims fail both steps of the *Alice* test.

The remaining claims of the '752 Patent relate to the same abstract concept of data recognition and retrieval. Specifically, each of the other independent claims refers only to standard computing means for decoding data. For example, the claims describe a "computer application" comprising "logic" ('752 Pat., Cl. 17), or a "symbology management application" (*id.*, Cl. 24), to perform each of the steps in Claim 1 of the '752 Patent.

Some of the dependent claims recite limitations for: (1) running visual detection applications in the background (*id.*, Cl. 4); (2) configuring visual detection applications to automatically detect barcodes (*id.*, Cl. 5); and (3) analyzing the decode string and selecting appropriate application to decode (*id.*, Cl. 9). These claims also suffer from the same results-oriented (and thus ineligible) claim language as Claim 1.

Other dependent claims recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| enabling users to select certain preferences | 2, 3, 18 |
| detecting barcodes based on user request | 7 |
| sending instructions to visual detection applications and remote servers | 8 |
| enabling the user to store information | 11 |
| providing e-commerce options to the user | 12 |
| decoding barcodes using visual search technology | 15, 23 |

The remaining claims recite activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. *See, e.g.*, '752 Pat., Cls. 6, 10, 13, 14, 16, 19, 20, 21, and 22.

Each of these claims, like Claim 1 of the '752 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful)

(quotations omitted). Because all of these claims are directed to the abstract idea of data recognition and retrieval and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

### B. The Disproportionate Risk of Preemption Confirms that the Claims Are Abstract.

Because the claimed methods and systems can be implemented using virtually any device capable of taking a photograph, any off-the-shelf scanning/decoding application, and any conventional server capable of sending and receiving information, the '752 Patent risks preempting all automated methods or systems for recognizing a pattern, like a barcode, and retrieving data based on that. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). Therefore, the claims implicate the same preemption concern undergirding the § 101 analysis and should be found ineligible.

## V. CONCLUSION

For the foregoing reasons, Topcon respectfully requests that the Court dismiss Symbology's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Topcon requests dismissal with prejudice.

Dated: July 17, 2019                                FISH & RICHARDSON P.C.

                                                    By: */s/ Rodeen Talebi*
                                                        Rodeen Talebi

                                                    Attorneys for Defendant
                                                    TOPCON POSITIONING SYSTEMS, INC.